# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MARK ANTHONY NELSON, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 2:12-cv-813-RDP |
| | } |
| MICHAEL ASTRUE, | } |
| Commissioner of Social Security | } |
| | } |
| Defendant. | } |

## MEMORANDUM OF DECISION

Plaintiff Mark Anthony Nelson ("Plaintiff") brings this action pursuant to Section 1613(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security[1] ("Commissioner") denying his application for supplemental security income benefits ("SSI") under Title XVI. *See* 42 U.S.C. § 1383(c). For the reasons outline below, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed an application for SSI under Title XVI of the Act on March 13, 2009. [R. 189]. Plaintiff alleged a disability onset date of January 1, 1998. [R. 189]. Plaintiff's application was initially denied on May 7, 2009. [R. 119]. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 4, 2010.[2] [R. 69-111]. In his February 24, 2011 decision, the ALJ denied disability benefits concluding that Plaintiff was not

---

[1]On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security.

[2]Plaintiff's original hearing date was August 18, 2010. [R. 112]. Plaintiff's counsel sought a continuance on his behalf because the day prior to the original hearing date, Plaintiff indicated he received treatment while in prison and Plaintiff's counsel desired time to obtain medical records associated with that treatment. [R. 114].

disabled under section 1614(a)(3)(A) of the Act. [R. 48]. After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review. [R. 1]. *See* 42 U.S.C. § 1383(c).

At the time of the hearing, Plaintiff was 46 years old and had completed eleventh grade. [R. 76]. Plaintiff had also obtained a GED. [R. 76]. Plaintiff was incarcerated for twenty (20) years and was released from prison about a year and a half before the hearing. [R. 79]. He was currently serving three years probation. [R. 85]. Plaintiff had last worked a temporary service job doing construction work for about a year and stopped working in May 2010. [R. 77]. Plaintiff was currently living in a halfway house. [R. 77].

Plaintiff claimed that he was unable to work due physical problems associated with foot infections and his mental condition, which he stated impaired his ability to communicate with people. [R. 81-82; 85]. Plaintiff also described his hearing loss in his right ear.[3] [R. 91-92]. Because he cannot hear out of his right ear, Plaintiff testified that he sometimes argues with individuals who think he is ignoring them. [R. 92]. Plaintiff also suffers from chronic bronchitis. [R. 99]. Family members have told him he suffers from "some type of breathing attacks" at night when he sleeps. [R. 100].

Since being released from prison, Plaintiff has used cocaine. [R. 93]. However, Plaintiff did not lose his temporary construction job due to this drug or alcohol use. [R. 95]. Plaintiff was collecting unemployment benefits in the amount of $123.00 per week at the time of the hearing. [R.

---

[3]On his Adult Disability Report, Plaintiff reported that he was fired for not being able to hear orders relayed to him. [R. 209].

93]. Plaintiff also received food stamps. [R. 94]. Plaintiff stated that his prescribed medication for his bipolar disorder, Seroquel, is only somewhat effective. [R. 96, 98]. Plaintiff claimed that this medication causes difficulty breathing and causes his tongue to swell making it difficult to speak. [R. 96, 98].

Plaintiff submitted various medical records in support of his disability claim. The earliest relevant treatment notes are from doctor's visits during Plaintiff's incarceration with the Bureau of Prisons. These records from 2008 note Plaintiff's chronic dermatitis to his feet and also indicate that Plaintiff had received treatment for athlete's foot, toe infections, and rashes. [R. 548, 551]. On December 10, 2009, Plaintiff presented to the Cooper Green Hospital Emergency Room complaining of a foot infection that had persisted for two weeks. [R. 251]. Treatment notes indicate that Plaintiff's toes displayed a bloody, yellow discharge, but no redness or inflammation was seen. [R. 251-252]. Upon discharge, Plaintiff was diagnosed with tinea corporis. [R. 252]. Plaintiff returned to Cooper Green Hospital on January 14, 2009 reporting similar problems with his feet. [R. 249]. Plaintiff was diagnosed with suspected severe tinea. [R. 249]. Treatment notes indicate that the treating physician, Dr. Lawrence Downs, told Plaintiff he must get more air to his feet and change his socks two to three times a day. [R. 249]. Dr. Downs also instructed Plaintiff to stop wearing combat boots. [R.249]. Plaintiff received prescriptions for topical creams, and Dr. Downs noted that Plaintiff's prognosis appeared favorable. [R. 249].

Plaintiff again returned to Cooper Green Hospital about one month later on February 16, 2009 and reported that he felt little no relief from the previous visit despite having used prescribed ointment and oral medication. [R. 246]. Plaintiff "demanded an antibiotic shot like he received at the federal correctional institute" as he claimed it was the best medicine he had received to treat his

3

foot fungus. [R. 246]. Dr. Downs noted some fissuring but no streaking or cellulitis. [R. 246]. Crusting that was present during Plaintiff's January visit was not seen during this visit. [R. 246]. Plaintiff was again diagnosed with chronic tinea and/or contact dermatitis of the left foot. [R. 246]. Dr. Downs arranged for Plaintiff to see a doctor in the dermatology department later that week. [R. 247]. Dr. Downs also made phone calls to try to determine what antibiotic Plaintiff received while in prison. [R. 246-248].

During a phone call with Plaintiff on February 18, 2009, Dr. Downs told Plaintiff that he was now under the care of the dermatology department and that no follow-up visits with his office would be made. [R. 245]. Dr. Downs also advised Plaintiff of the conversations he had with prison officials who indicated that a written request would have to be mailed to Washington, D.C. in order to determine what antibiotic he received in prison. [R. 245]. Plaintiff saw a Cooper Green dermatologist on February 20, 2009. [R. 242]. Treatment notes are nearly illegible but indicate that Plaintiff was seen for an evaluation of his feet. [R. 242].

On April 17, 2009, Morton Goldfarb, M.D., performed a consultative examination of Plaintiff. [R. 255-261]. Dr. Goldfarb noted that Plaintiff had a history of no hearing in his right ear and that Plaintiff was having trouble at work due to his hearing loss. [R. 256]. Plaintiff's audiometric evaluation showed "a profound sensorineural hearing loss involving his right ear." [R. 256]. Dr. Goldfarb opined that Plaintiff "is hampered by his inability to hear from the right side." [R. 256]. Dr. Goldfarb recommended ear plugs and believed that with proper medical care, including a hearing aid, Plaintiff could be rehabilitated back into an effective working individual. [R. 256].

On May 7, 2009, an agency physician, Dr. Robert Heilpern, completed a physical summary evaluation based upon Plaintiff's medical records for visits to Cooper Green for his foot fungus and Dr. Goldfarb's examination. [R. 262]. This physical summary only contains information from these treatment notes and does not provide any conclusions based upon their contents.

Plaintiff again reported to the Cooper Green Hospital Emergency Room on November 24, 2009 complaining of foot swelling and pain. [R. 263]. These treatment notes indicate that Plaintiff has recurring athlete's foot that occasionally gets infected. [R. 263]. During this particular visit, Plaintiff had a small blister on the sole of his left foot, mild left foot swelling, and mild erythema around the toes on his left foot. [R. 264]. Plaintiff was diagnosed with a soft tissue infection and was given a prescription for an antibiotic. [R. 264-265].

Plaintiff was admitted to the Emergency Room at UAB Hospital on December 8, 2009. [R. 279]. Plaintiff complained of an infection in his left foot and stated that it was swollen and bleeding. [R. 281]. Plaintiff was diagnosed with a bacterial infection and was prescribed antibiotics. [R. 284, 285, 300]. Plaintiff was admitted to the Emergency Room at UAB Hospital again on March 1, 2010. [R. 266]. Plaintiff complained of a cough, sore throat, and congestion. [R. 266]. Plaintiff was diagnosed with bronchitis and sinus headache. [R. 269]. These treatment notes contain no information regarding Plaintiff's foot fungus; however, Plaintiff was advised to stop smoking. [R. 272, 276].

Plaintiff returned to the UAB Emergency Room on April 3, 2010 complaining of a left foot infection and a sore throat. [R. 286]. Plaintiff was diagnosed with a bacterial infection and athlete's foot. [R. 290-291]. During this visit, Plaintiff was told these recurrent episodes would continue unless he used an over the counter medication to treat his athlete's foot. [R. 305].

Plaintiff visited the UAB Emergency Room on July 1, 2010 complaining of mild shortness of breath and fatigue. [R. 312]. Plaintiff indicated that he had been treated earlier in the year for bronchitis, but he denied any other problems or concerns. [R. 312]. Plaintiff requested admission to the hospital upon arrival. [R. 312]. Treatment notes indicate that Plaintiff was alert and oriented. [R. 313]. He was able to walk around without difficulty and was pleasant and cooperative. [R. 313]. When the physician returned to his room to explain x-ray results, Plaintiff's wife was in his room and stated that Plaintiff was a "schizo" and that he was suicidal. [R. 313]. When asked directly, Plaintiff stated that he was depressed and that he would like to jump off a bridge. [R. 313]. Treatment notes state that Plaintiff did not initiate this conversation and had been pleasant and cooperative throughout his stay in the emergency room. [R. 313]. Plaintiff was seen by a psychiatric resident and his condition and disposition were pending that evaluation at discharge. [R. 313]. Plaintiff was diagnosed with bronchitis, questionable suicidal ideation, and history of schizophrenia. [R. 313].

Medical records associated with Plaintiff's bipolar disorder include a hospitalization and a report from Plaintiff's treating psychiatrist. On July 6, 2010 Plaintiff was admitted to Hill Crest for a psychological assessment. [R. 314]. Plaintiff was discharged from on July 13, 2010 after reporting improvement in his functioning. [R. 316]. Upon discharge, Plaintiff denied suicidal thoughts and his anger and depression had improved. [R. 316]. Plaintiff was prescribed a variety of medications at the time of discharge. [R. 316]. On October 19, 2010, Plaintiff's treating psychiatrist, Dr. Shakil Khan, completed a "Statement of Patient's Mental Impairment" and found that Plaintiff was moderately limited in the following areas: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation. [R. 324-325].

6

In response to a hypothetical posed by the ALJ, a vocational expert ("VE") testified that based upon Plaintiff's age, education, work experience, and RFC, that Plaintiff could perform the following jobs: material moving and labor, hand packager and packer, inspector and tester, and cleaner. [R. 106-107]. According to the VE if the ALJ determined that Plaintiff experienced a moderately severe to severe limitation as a result of his pain and/or his depression, these restrictions would eliminate these types of work. [R. 107]. The VE further stated that if the ALJ concluded that Plaintiff could have frequent or occasional contact with his coworkers and supervisors, he could perform the jobs she listed. [R. 108].

**II.    ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 25, 2009, the application date. [R. 38]. The ALJ concluded that Plaintiff suffers from hearing loss in his right ear, bilateral foot fungus, and bipolar disorder, all of which are "severe"

impairments as defined by the Act. [R. 38]. Nonetheless, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in the Listing of Impairments in 20 C.F.R. Part 404, Subpart F, Appendix 1. [R. 39].

After consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 416.967(c). [R. 41]. The ALJ stated that Plaintiff can work with or around things but not the general public. [R. 41]. The ALJ also concluded that Plaintiff should not drive or operate hazardous machinery and should not work around unrestricted heights. [R 41]. The ALJ found that Plaintiff is unable to perform his past relevant work construction worker but is potentially capable of performing his past relevant work as a kitchen helper.[4] [R. 46]. Although Plaintiff may be able to perform his past relevant work as a kitchen helper, the ALJ determined that other jobs existed in the national economy that he is also capable of performing. [R. 46]. Based upon testimony from the VE, the ALJ found that Plaintiff could perform medium occupations of moving material and labor, cleaner, and hand packager and packer. [R. 47]. Also based upon testimony from the VE, the ALJ concluded that Plaintiff could perform light unskilled jobs including inspector, tester, packager, packer, and cleaner. [R. 47]. Thus, the ALJ ultimately found that Plaintiff is not disabled as that term is defined in the Act, and therefore, is not entitled to SSI. [R. 48].

### III.   Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision reversed, or in the alternative, remanded under sentence four of Section 405(g) for development of the record and further proceedings. [Pl.'s Mem.

---

[4]The ALJ stated that Plaintiff could not perform his past relevant work as a kitchen helper if it involved leaving the kitchen and entering a dining room area. [R. 46].

10]. Specifically, Plaintiff argues that the ALJ's decision is not supported by substantial evidence and improper legal standards were applied because: (1) the ALJ should have specifically considered Listing 8.04 when making his physical RFC determination and the ALJ's RFC findings did not comply with SSR 96-8p, which requires a function by function analysis regarding various restrictions; and (2) the ALJ did not properly identify Plaintiff's mental limitations that were more than minimal in making his mental RFC determination and the ALJ did not explain why Plaintiff's inability to work around the general public would not preclude him from working around coworkers and supervisors. [Pl.'s Mem. 5-9].

**IV.    Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations

omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1259.

## V.  Discussion

After careful review, the court concludes that the ALJ's decision is due to be affirmed for the reasons discussed below.

### A.  Substantial Evidence Supports the ALJ's Physical RFC Findings

Plaintiff challenges the ALJ's physical RFC findings on two separate grounds. First, Plaintiff argues that rather than simply mentioning Listing 8.00 *et seq.*, the ALJ should have specifically considered listing 8.04 – chronic infections of the skin with extensive fungating or extensive ulcerating skin lesions that persist for at least three months despite prescribed treatment. Second, Plaintiff claims that the ALJ should have conducted a function-by function analysis in accordance with Social Security Ruling 96-8p, 1996 WL 374184, at *3 (1996). The court addresses each of these contentions in turn.

Regarding Plaintiff's first argument, Plaintiff's brief cites his treatment history for his foot infections and states that "[i]t does not appear likely that Plaintiff could perform the requirements of medium work, on his feet for a majority of the day (SSR 83-10) under these circumstances." [Pl.'s Mem. 6-7]. First, the court notes that the ALJ implicitly considered each listing under Section 8 by referring to Listing 8.00 *et seq*. Second, Plaintiff states that "it does not appear likely" that Plaintiff could walk and/or stand for approximately six (6) hours in an 8-hour work day, Plaintiff cites no evidence to the contrary. Plaintiff fails to explain how the ALJ erred nor has he presented any supporting arguments or legal authority on this claim. As it stands, the argument remains too

undeveloped for the court to make any determinations regarding it.  *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived.").

Regarding Plaintiff's second argument, Social Security Ruling 96-8p identifies the RFC assessment as a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3 (1996). Plaintiff maintains that the ALJ erred in making his physical RFC findings because he only addressed Plaintiff's RFC in terms of lifting capacity and height and machinery restrictions, and not other environmental factors including: extremes of temperature, humidity, noise, vibration, fumes, odors, toxic conditions, dust, poor ventilation, and hazards. [*See* Pl.'s Mem. 7-8].  Defendant counters that the ALJ specifically considered every piece of medical record that could possibility support any environmental limitations, including one emergency room visit where Plaintiff complained of shortness of breath., but that no physician imposed any work-related restrictions due to Plaintiff's mild bronchitis. [Def.'s Mem. 15].  In arriving at his physical RFC conclusions, the ALJ specifically considered Plaintiff's testimony and medical evidence (including treatment notes, clinical findings, and diagnostic tests). [R. 41-44].

The ALJ referred to Plaintiff's Cooper Green treatment notes recorded on the following dates:  February 20, 2009; March 1, 2009; April 3, 2009; and April 12, 2009. [R. 43].  The ALJ stated that Plaintiff's foot infection improved with each visit and that no streaking was observed. [R. 43].  The ALJ also discussed Dr. Goldfarb's findings that suggested with proper medical care, including a hearing aid, Plaintiff could be rehabilitated into an effective working citizen. [R. 43]. The ALJ also specifically referred to Plaintiff's additional emergency room visits for his recurrent

athlete's foot, one bronchitis diagnosis in March 2010, and shortness of breath in July 2010. [R. 43-44].

After discussing this evidence of record in detail, the ALJ found that Plaintiff had suffered from recurring foot infections and hearing loss; however, in the ALJ's opinion, these alleged disabling effects alleged by Plaintiff were not entirely supported by the record. [R. 44]. For example, Plaintiff testified and also indicated in his Adult Function Report that he sought employment each day, which according to the ALJ, was inconsistent with his alleged inability to work. [R. 44]. Moreover, although Plaintiff testified that his right ear was completely "dead," Dr. Goldfarb opined that a hearing aid would be beneficial. [R. 44]. Ultimately, the ALJ concluded that Plaintiff was capable of medium work with no driving, no working around hazardous machinery, and no unrestricted heights. [R. 44].

Although the ALJ did not discuss Plaintiff's RFC in terms of any environmental restrictions, the Eleventh Circuit has held that an ALJ's failure to "more specific[ally] and explicit[ly] set forth his findings with respect to a claimant's "functional limitations and work-related ability on a function-by-function basis" is excusable where it is apparent the ALJ did "consider all of the evidence." *Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. 2007). Based upon a careful review of the record, this court is satisfied that substantial evidence supports the ALJ's finding that Plaintiff retains the RFC for medium work with no driving, no working around hazardous machinery, and no unrestricted heights. In reaching this conclusion, the ALJ clearly considered the record evidence regarding any possible environmental limitations as demonstrated by his reference to Plaintiff's March 2010 bronchitis diagnosis and a subsequent visit to the emergency room complaining of shortness of breath in July 2010. [R. 44]. Other than these two medical records,

the record is void of evidence suggesting Plaintiff should avoid working in or around fumes, humidity, odors, dust, and other similar environmental conditions. No physician indicated the need for any environmental restrictions based upon Plaintiff's bronchitis and, in fact, several days after Plaintiff was treated for bronchitis, Plaintiff's treating psychiatrist observed that Plaintiff was "currently asymptomatic" with no shortness of breath. [R. 320-321]. The fact that the ALJ did not specifically state Plaintiff's RFC in terms of any of these restrictions is harmless as the ALJ considered the record as a whole and noted in great detail Plaintiff's medical history and evidence supporting the stated limitations and restrictions. *See Freeman*, 220 F. App'x at 959-60; *see also Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (finding that the ALJ's failure to adopt further limitations on claimant's ability to perform work related activities was proper where the evidence or record did not support such limitations).

      B.      **Substantial Evidence Supports the ALJ's Mental RFC Findings**

Plaintiff next asserts that because the ALJ determined that Plaintiff's bipolar disorder was a "severe" impairment, he was bound to identify the limitations that were more than minimal under a Psychiatric Review Technique ("PRT") and a mental RFC and that he should have explained why Plaintiff's inability to work around the general public would not preclude him from working around supervisors and coworkers. [Pl.'s Mem. 8-9]. Again, Plaintiff's arguments miss the mark.

Here, the ALJ found Plaintiff has mild limitations in activities of daily living and no episodes of decompensation. [R. 39-40]. Further, the ALJ determined Plaintiff has moderate limitations in social functioning and in concentration, persistence, and pace. [R. 40]. The ALJ noted that his RFC reflects the degree of limitation he found in considering these criteria. [R. 39]. Ultimately, the ALJ concluded that Plaintiff could work "around things but not the general public." [R. 41].

Although Plaintiff contends the ALJ should have considered other limitations that were more than minimal under a PRT or mental RFC, Plaintiff neither cites authority for this proposition nor identifies what other limitations the ALJ should have considered in making his mental RFC finding. Moreover, Plaintiff cites no authority that requires an ALJ to have explained why Plaintiff's bipolar disorder permitted him to work around coworkers and supervisors but not the general public. It is axiomatic that Plaintiff "bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Moreover, the ALJ is not required to include limitations in a VE hypothetical question or RFC finding that are not supported by the record. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). In his hypothetical questions to the VE during the hearing, the ALJ specifically asked the VE about frequent and occasional contact with supervisors and coworkers to which the VE responded that Plaintiff would not be precluded from any identified jobs based on either restriction. [R. 108]. Further, Plaintiff testified that he was a good worker when working in construction, which was a job requiring some contact with coworkers and supervisors. [R. 42, 90]. The ALJ also commented that the medical evidence indicated that Plaintiff's mood and anger improved when he was taking prescribed medications. [R. 44]. Based upon a careful review of the ALJ's decision, the court concludes that the ALJ did not err in making his mental RFC findings and that the findings are supported by substantial evidence.

**VI.    Conclusion**

For the reasons discussed above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied.

15

Therefore, the Commissioner's decision is due to be affirmed.  A separate order in accordance with the memorandum or decision will be entered.

      **DONE** and **ORDERED** this    6th    day of May, 2013.

                                             **R. DAVID PROCTOR**
                                             UNITED STATES DISTRICT JUDGE